# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STATE FARM FIRE & CASUALTY COMPANY,

        Plaintiff,

  vs.

HARRIS LAW FIRM, LLP,

        Defendant.

Case No.: 2:22-cv-01015-GMN-DJA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 20), filed by Plaintiff State Farm Fire & Casualty Company.  Defendant Harris Law Firm, LLP filed a Response, (ECF No. 23), to which Defendant filed a Reply, (ECF No. 24).

For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

**I.    BACKGROUND**

This is a declaratory judgment action in which Plaintiff seeks clarification of its duties to defend and indemnify Defendant pursuant to an insurance policy it issued for potential liabilities stemming from a suit brought against Defendant in state court by 702PC, LLC. (*See generally* First. Am. Compl.).  The specific facts underlying the state court and instant dispute are outlined below.

In June 2017, attorney Richard Harris executed a lease agreement for a North Las Vegas aircraft hangar in anticipation of forming a limited-liability company for purchasing an airplane. (Richard Harris Dep. 10:2–23, Ex. F to Mot. Summ. J., ECF No. 20-6).  The hangar was to house Richard Harris' aircraft, which was for the use of Defendant and its principals, Richard Harris, Joshua Harris, and Ben Cloward. (*Id.* 9:9–22); (702PC Corporate Data Sheet at

2–3, Ex. E to Mot. Summ. J., ECF No. 20-5).  Richard Harris, Joshua Harris, and Ben Cloward later formed 702PC LLC and purchased the Pilatus Aircraft ("Aircraft") underlying this lawsuit. (Richard Harris Dep. 18:18–19:4, Ex. F to Mot. Summ. J.); (Aircraft Registration Application, Ex. 9 to Resp., ECF No. 23-9).

Defendant and 702PC LLC entered into an agreement by which 702PC LLC agreed to provide air transportation services for Defendant's employees. (Air Transportation Services Agreement, Ex. 11 to Resp., ECF No. 23-11).  Defendant made monthly lease payments for the hangar from June 2017 to April 2018. (Richard Harris Dep. 23:18–24:7, Ex. F to Mot. Summ. J.); (Harris Law Firm Payment Ledger, Ex. G to Mot. Summ. J., ECF No. 20-7).  After this date, 702PC LLC made monthly lease payments for the hangar. (702PC LLC Rent Payment Ledger, Ex. I to Mot. Summ. J., ECF No. 20-9).

Although 702PC LLC paid for the hangar, Defendant, 702PC LLC, and Richard Harris each used the space; specifically, Defendant stored files and Richard Harris kept his own personal vehicles in the hangar. (Richard Harris Dep. 26:12–21, 22:14–25, 33:12–17, Ex. F to Mot. Summ. J.).  Richard Harris explained that 702PC LLC's use of the hangar was limited to Aircraft related activities, while Defendant's use was limited to file storage. (*Id.* 43:4–7, 52:7–14, 53:1–6).  No physical barriers within the hangar restricted a party's access to certain areas of the hangar or property stored therein, and each party had the ability to access the hangar as needed for the items they stored in the space. (*Id.* 17:23–18:11, 43:4–7, 45:11–18, 52:15–22). According to Richard Harris, although there was no written rule regarding Defendant and its employees' interactions with the Aircraft, there was an understanding that Defendant and its employees would have nothing to do with the plane. (*Id.* 39:2–7, 40:2–8, 41:5–8)

In November 2018, Defendant's employees Chase Rasmussen and Jesus Mendoza were directed to remove Defendant's stored files and Richard Harris's personal vehicles from the hangar. (*Id.* 42:1–23, 44:1–45:10, 50:24–51:5).  They were not authorized to remove or

otherwise touch the Aircraft. (*Id.* 44:1–45:10).  Despite lacking authorization, Rasmussen and Mendoza used a powered wheel-dolly to move the Aircraft. (*Id.* 55:3–11).  Rasmussen and Mendoza ultimately left the Aircraft under the hangar door and briefly exited the hangar. (*Id.* 48:21–49:17).  After they left, "through an as-yet unknown set of circumstances," the hangar door closed on the Aircraft, seriously damaging the plane. (Resp. 2:6–9, ECF No. 23).  702PC LLC, through its primary insurer, had the Aircraft repaired. (Aircraft Invoice Summary, Ex. 3 to Resp., ECF No. 23-3).  702PC LLC sent Plaintiff, as Defendant's insurer, two demands seeking reimbursement for damages incurred. (Demand, Ex. 4 to Resp., ECF No. 23-4); (Suppl. Demand, Ex. 5 to Resp., ECF No. 23-5).  Plaintiff rejected these demands, asserting the terms of the policy exclude coverage for the events leading to the Aircraft's damages. (Resp. 2:14–16).

702PC LLC then filed suit against Defendant in state court, leading Plaintiff to file the instant declaratory judgment action in this Court to determine whether it is liable to Defendant under the policy. (*See generally* FAC).  Plaintiff subsequently filed the instant Motion for Summary Judgment, (ECF No. 20).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quotation marks and citation omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (internal citations omitted).

**II    DISCUSSION**

Plaintiff's Motion for Summary Judgment boils down to the applicability of two provisions in the policy that exclude liability coverage. (*See generally* Mot. Summ. J.).  Of these two, the Court finds that coverage is excluded under the policy's care, custody, and

///

///

control provision.[1]

Exclusion 12 under the policy provides that Plaintiff is not obligated to cover "property damage" to "personal property in the care, custody, or control of any insured[.]" (Policy at 29, Ex. B to Mot. Summ. J., ECF No. 20-2). In the context of insurance, "custody" means to have things "in charge—safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy or authority, as does possession in its full significance." *Bowles v. Consolidated American Ins. Co.*, 11 Va. Cir. 146, 147 (1988) (quoting *Aetna Ins. Co. v. Kaplan*, 141 S.E.2d 725 (Va. 1965)). The term "care" includes the concepts of "charge, supervision, management, responsibility for or attention to safety and well-being, and temporary keeping for the benefit of the owner." *Neff Towing Service, Inc. v. United States Fire Ins. Co.*, 652 N.W.2d 604, 610 (Neb. 2002). And the term "control" may include "the exercise of regulation, influence, domination, or command with respect to property." *Id.* at 610.

"The great majority of the cases," including a recent decision by this court, "support the view that property in the care, custody, or control of the insured refers to possessory handling of the property as distinguished from proprietary control." 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 126:22 (3d ed. 2007) (collecting cases); *see Global Sterilization and Fumigation, Inc. v. Admiral Ins. Co.*, No. 3:20-cv-00444, 2022 WL 2069249, at *3 (D. Nev. May 4, 2022) (finding that care, custody, or control examines whether a party "exercised a possessory right over the property that constitutes exclusive, care, custody, or control"). This exclusion "is aimed at eliminating coverage where the insured is closely related to some type of work-related situation and is exercising some sort of control over the property subsequently damaged and to remove the inducement for the insured to submit exaggerated or false claims and avoid the guarantee of workmanship." 46 C.J.S. Insurance § 1379 (Aug. 2023 Update).

---

[1] Plaintiff also contends it owes no liability coverage under the aircraft, auto, or watercraft exclusion. (Mot. Summ. J. 21:5–23). Because the Court finds coverage is excluded under the care, custody, or control exclusion, it declines to examine the applicability of the remaining provision.

According to Plaintiff, while Defendant did not legally own the Aircraft, its employees exercised exclusive possessory control over the Aircraft when the incident occurred, such that the Aircraft was in its care, custody, or control. (Mot. Summ. J. 10:1–20:23). In response, Defendant contends that its employees could not exercise care, custody, or control over the Aircraft because they were not authorized to possess or move the plane for any purpose. (Resp. 14:8–17:17). Defendant further contends that the exclusion is inapplicable because any control exercised by its employees was not exclusive, as Rasmussen and Mendoza were not present when the incident occurred and had thereby relinquished any possessory control they had over the Aircraft. (*Id.* 12:26–14:6). The Court first examines whether Rasmussen and Mendoza exercised possessory control over the Aircraft despite lacking consent or authorization to move the plane.

**A. Possessory Control**

Defendant argues that its employees could not have exercised possessory control over the Aircraft because they did not move the plane with the express or implied consent of its owners and were not entrusted with care of the plane by 702PC LLC. (Resp. 14:7–17:7). Defendant's argument is well-taken; "Until 1955, it was universally held that an insured could not be found to have exercised control over damaged property unless the insured operated with the consent of the owner or otherwise under legal authority." Insurance Coverage of Construction Disputes § 20:15 (2d ed. 2023) (citing *Great Am. Indem. Co., of N.Y. of Saltzman*, 213 F.2d 743, 747 (8th Cir. 1954) (finding that a "mere trespasser inspecting the aircraft" could not have "care, custody, or control of it"). After 1955, however, several courts have found that physical control can occur without the consent of the owner. *See* Insurance Coverage of Construction Disputes § 20:15 (2d ed. 2023) (collecting cases). As the Supreme Court of Oregon articulated, "[w]here the insured knowingly assumes control over another person's

property, either with or without permission, there are reasons for excluding coverage." *Ferguson v. Birmingham Fire Ins. Co.*, 460 P.2d 342, 346 (Or. 1969) (en banc).

      Here, it is undisputed that Defendants' employees had access to the Aircraft and exercised that right of access by knowingly and intentionally assuming physical control over the plane. (Resp. 2:2–5, 10:15–19, 13:13–14); (Reply 4:7–17). "Physical control is the hallmark of 'care, custody, and control, or another's property." 9 Couch on Ins. § 126:22 (Sept. 2023 Update). After Defendant's employees took control of the Aircraft, the care, custody, and control of the plane was completely, though temporarily, in the hands of Defendant. *See Essex Ins. Co v. Soy Sock Co.*, 503 F. Supp. 2d 1068, 1075 (C.D. Ill. Aug. 24, 2007) (explaining that factors to consider in determining possessory control is whether the defendants were granted or exercised the right of access to the equipment). Despite Defendant's arguments to the contrary, the Court cannot ignore that it, through its employees, intentionally placed the Aircraft within its own dominion. *See Transamerica Ins. Co. v. Preston*, 632 P.2d 900, 904 (Wash. Ct. App. 1981) (holding that care, custody, or control exclusion barred coverage because insured was operating the train when collision occurred). To find otherwise would elevate the formal or technical relationship between the parties over what transpired. Put differently, even assuming Defendant and its employees were not supposed to interact with the Aircraft pursuant to an unwritten policy, the fact remains Rasmussen and Mendoza *did* move the Aircraft. It is difficult to reconcile Defendant's contention that its employees lacked possessory control over the Aircraft when they intentionally and knowingly took control of the plane and moved it. Accordingly, the Court finds that Defendant, through its employees, exercised possessory control over the Aircraft.

**B. Exclusive Control**

      Defendant's remaining argument is that the care, custody, and control exclusion is inapplicable because the Aircraft was not under the exclusive and complete control of its

1  employees when the hangar door closed on the plane. (Resp. 12:1–14:6).

2  For the care, custody, and control exclusion to apply, an insured's control over the property at issue must be exclusive. *See Prateorian Ins. Co v. Western Milling, LLC*, No. 1:15-cv-00557, 2017 WL 4284717, at *4 (E.D. Ca. Sept. 27, 2017). "While the control exercised by the insured must be exclusive, it need not be continuous, and intimate handling of that property is not a perquisite to establishing possessory control." 46 C.J.S. Insurance § 1379 (Aug. 2023 ed.). Exclusivity of possession may exist even if the possession is of short duration, *Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc.*, 527 F.2d 1025, 1029 (7th Cir. 1975), and the fact that the owner of the property also had access to the property does not preclude a finding of possessory control, *Essex Ins. Co.*, 503 F. Supp. at 1075.

The Court finds that Defendant, through its employees, had exclusive control of the Aircraft when the incident occurred for three reasons. First, the fact that 702PC LLC and Defendant shared simultaneous access to the hangar and the Aircraft within the hangar does not preclude a finding that Defendant had exclusive control when the incident occurred. *Id.* Second, it is undisputed that the operative negligent act, *i.e.*, the moving of the Aircraft into the hangar door, was completed while under the exclusive control of Defendant's employees. (Resp. 10:12–14); (Reply 7:10–19). Although 702PC LLC and Defendant shared the right to access the hangar and the Aircraft as functional co-tenants, Defendant's employees were the only party exercising physical control over the Aircraft when the plane was put into a position of peril. Third, the Court disagrees with Defendant's contention that a finding of exclusivity is precluded by the fact that the Aircraft was damaged "while no one was exercising control over it[.]" (Resp. 10:20–21). It bears repeating that no other person or entity exercised any form of physical interaction or control over the Aircraft during the incident. And the parties proffer no evidence or explanation for why the hangar door descended. Although other tenants of the hangar had an unfettered right of access to the hangar, Defendant and its employees were the

exclusive users of that right when the incident occurred. Therefore, the record before the Court demonstrates that Defendant's care was exclusive when the accident occurred.

Accordingly, the Court finds that Plaintiff owes no liability coverage obligation to Defendant because of the applicability of the care, custody, and control exclusion. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED.

### III.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 20), is **GRANTED**.

**The Clerk of Court is instructed to close the case and enter judgment in favor of Plaintiff against Defendant.**

**DATED** this __29__ day of February, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT